FILED
U.S. DISTRICT COURT

2010 OCT -6  P 3: 58

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

Michael Waters
1330 W 3100 N
Pleasant View, UT 84414
801-628-5323
mwaters5@gmail.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

|  |  |
|---|---|
| **Michael Waters** <br><br> **Plaintiff,** <br><br> **V.** <br><br> **Bank Of America,** <br><br> **Defendant.** | **EMERGENCY** <br> **PETITION FOR TEMPORARY** <br> **RESTRAINING ORDER AND** <br> **PRELIMINARY INJUNCTION** <br><br> **(TRUSTEE SALE DATE:** <br> **10/26/2010 12:00 PM)** <br> 1:10 CV 00150-BSJ |

## Notice of Motion

Plaintiff, Michael Waters , (Plaintiff) pursuant to Federal Rules of Civil Procedure Rule 65 and/or Utah. R. Civ. P. 65A, moves for a Temporary Restraining Order and Preliminary Injunction enjoining Defendants by and through their corporations, ("Defendants") from conducting a Trustee's Sale, unless and until such time that the Defendants can establish to this Court that Defendants, are qualified to act and exercise the powers and remedies of the Trustee and Beneficiary pursuant to Utah Code 57-1-19 *et seq*. and

until such time, if any, that the Court determines the Defendants have clearly established by documentary evidence that Defendants have the right to do so.

Plaintiffs requests this Court to ONLY consider function and NEVER form in Plaintiffs pleadings as Plaintiffs are *pro se* litigant.

Respectfully, this court is hereby put upon mandatory notice to observe the determinations of the Supreme Court of the United States, in the case Puckett v. Cox 456 F2d 233 (1972 Sixth Circuit USCA) where it was held that a pro-se complaint requires a less stringent reading than one drafted by an attorney, said by Justice Black in Conley v. Gibson. 355 U.S. 41 at 48(1957).

Petitioner believes that the court has a responsibility and legal duty to protect any and all of her constitutional and statutory rights. See United States v. Lee, 106 US 196,220 [1882].

Pursuant to, *inter alia,* U.C.C. and/or, *inter alia*, Utah Code 70(a), Plaintiffs hereby questions the authenticity and validity of the signatures of all parties, therefore requiring any and all said parties to provide evidence of authenticity and validity for any and all signatures on any and all documents and/or pleadings.

Pursuant to, *inter alia*, Utah Code 76-6-403, 57-1-19 *et seq*, and others, Plaintiffs questions the authenticity and validity of all recorded and/or notarized documents.

This Application is supported by the Complaint and the Exhibits attached thereto on file.

## I.   INTRODUCTION

On or about May 29, 2009, the Plaintiffs refinanced their property and as shown by the Complaint, the Deed of Trust is not currently lawfully assigned to the present purported beneficiary of the Deed of Trust.  Despite

Plaintiffs' demand for production of documents permitted and mandated by Federal law, the beneficiary and its purported nominees, agents and representatives have failed to produce proof that the purported present beneficiary, Bank Of America, has properly or lawfully acquired that interest.

This action has been brought to halt the Trustee's Sale set for Wednesday, October 26, 2010, 12:00 PM by parties who do not have the right or authority to do so. A Temporary Restraining Order and Preliminary Injunction is necessary to permit and require the Defendants, to produce evidence that they have the right to proceed with statutory remedies available only to the lawful beneficiary and successor trustee of a Deed of Trust.

## II.   STATEMENT OF FACTS

Bank Of America
(Defendant).

Plaintiffs hereby questions the authenticity and validity of the signatures of all parties, therefore requiring any and all said parties to provide evidence of authenticity and validity for any and all signatures on any and all documents and/or pleadings.

Pursuant to Utah Code 70A, Plaintiff hereby questions the authenticity and validity of the signatures of all parties, therefore requiring any and all said parties to provide evidence of authenticity and validity for any and all signatures on any and all documents and/or pleadings.

Pursuant to Utah Codes 76-8414, 76-6-403 and 57-1-19 et seq, Plaintiff questions the authenticity and validity of all recorded and/or notarized documents.

Plaintiffs alleges as follows:

**Plaintiffs states on and for the record, Plaintiffs believes that Defendant(s) jointly and/or separately have violated: Utah Codes 76-8-414, 76-6-403 and 57-1-19 et seq and/or other Utah laws and if true; Plaintiffs believes Defendant(s) have knowingly, intelligently and willfully with full knowledge of the consequences thereof permanently forsaken the right and/or standing to foreclose on Plaintiffs real property.**

## PARTIES

1.      Plaintiff, Michael Waters, is a married man and a citizen and civilian of the State of Utah.

2.      Defendant, Bank Of America who claims to be the creditor, servicer and debt collector, caused events to occur within the jurisdiction of this Court from which Plaintiffs's Complaint arises.

## JURISDICTION AND VENUE

3.      This Court had jurisdiction over the subject matter of this action pursuant to USDC has limited jurisdiction in that they can only hear case that fall both within the scope defined by the Constitution in Article III Section 2 and Congressional statues See 28 U.S.C. §1251, §1253, §1331, §1332.  US Constitution Article 3 Section 2 and there is a federal question of Truth in Lending Act, Real Estate Settlement Procedures Act,  12 USC § 38A, and federal foreclosure law.

4.      The Defendants are all Doing business in this State of Utah.

5.      The supposed contract in dispute was signed in this State of Utah.

6.    The Land and improvements which are the subject matter of this case in question are in the state of Utah.

7.    The USDC has subject matter jurisdiction over commerce and real estate issues fall under commerce and money.  See Jurisdiction defined by the Cornell School of Law.

8.    The USDC has supplemental jurisdiction because of Title 28 Sec 13.62 and 67.

9.    The USDC has supplemental jurisdiction because Article 1 Section 8 Clause 5 of the Constitution.

10.    The USDC has supplemental jurisdiction because of Article 1 Sec 10.

### DISCOVERY

11.    Discovery level is pursuant to Title 5 Federal Rules of Procedure.

### JUDICIAL NOTICE

12.    Plaintiffs, who are unschooled in law and asks the Court to take Judicial Notice of the enunciation of principles of law as quoted in *Haines v. Kerner,* 404 U.S. 519, wherein the court has directed that those who are unschooled in law making pleadings and/or complaints shall have the court look to the substance of the pleadings rather than the form.

13.    All officers of the UNITED STATES USDC are hereby placed on notice under authority of the supremacy and equal protection clauses of the United States Constitution and the common law authorities and principals of law as quoted in *Platsky v. C.I.A.* 953 F.2d. 25, and *Anastasoff v. United States,* 223 F.3d 898 (8th Cir. 2000) relying on *Willy v. Coastal Corp.,*   503

U.S. 131, 135 (1992), *"United States v. International Business Machines Corp.*, 517 U.S. 843, 856 (1996), quoting *Payne v. Tennessee*, 501 U.S. 808, 842 (1991) (Souter, J., concurring). *Trinsey v. Pagliaro*, D.C. Pa. 1964, 229 F. Supp. 647, *American Red Cross v. Community Blood Center of the Ozarks*, 257 F.3d 859 (8th Cir. 07/25/2001), *In re Haines*: Pro se persona litigants (Plaintiffs are Pro se persona litigants) are held to less stringent pleading standards than bar licensed attorneys. Regardless of the deficiencies in their pleadings, Pro se persona litigants are entitled to the opportunity to submit evidence in support of their claims. In re *Platsky*: court errs if court dismisses the Pro se persona litigant (Plaintiffs are Pro se litigants) without instruction of how pleadings are deficient and how to repair pleadings. In re *Anastasoff*: litigants' constitutional rights are violated when courts depart from precedent where parties are similarly situated. All litigants have a constitutional right to have their claims adjudicated according to the rule of precedent. See the principal of law as quoted in *Anastasoff v. United States*, 223 F.3d 898 (8th Cir. 2000).  Statements of counsel, in their briefs or their arguments are not sufficient for a motion to dismiss or for summary judgment, see the principal of law as quoted in *Trinsey v. Pagliaro*, D.C. Pa. 1964, 229 F. Supp. 647. Prevailing party on default judgment of liability must still prove damages, see the principal of law as quoted in *American Red Cross v. Community Blood Center of the Ozarks*, 257 F.3d 859 (8th Cir. 07/25/2001). This court is further noticed on U.S.C.A. Const. Amend. 5 – *Triad Energy Corp. v. McNeil* 110 F.R.D. 382 (S.D.N.Y. 1986), Fed. Rules Civ. Proc., Rule 60(b)(4), 28 U.S.C.A.,U.S.C.A. *Klugh v. U.S.*, 620 F.Supp. 892 (D.S.C. 1985), *State v. Blankenship* 675 N.E. 2d 1303, (Ohio App. 9 Dist. 1996), *Graff v. Kelly*, 814 P.2d 489 (Okl. 1991), *Capital Federal Savings Bank v. Bewley*, 795 P.2d 1051 (Okl. 1990),

and *Com. V. Miller,* 150 A.2d 585 (Pa. Super. 1959), all discussed and relied upon *infra.*

14.    Defendant(s) hereby make declaration of non-corporate status. Defendant(s) hereby makes declaration of domicile and revokes any previous declaration of domicile. Plaintiffs are domiciled in Utah state. Defendant(s) hereby makes declaration that their names are "Michael Waters", which are separate and distinct from MICHAEL WATERS or any other variation or pseudonym, not the upper and lower case Michael Waters, Michael, W Waters

15.    The Plaintiffs, do solemnly affirm that they are of lawful age, being of sound mind and competent to make this affidavit and willing to testify in open court; that the statements herein are from our own personal, firsthand knowledge of the information and facts contained herein and are true and correct in substance and in fact; and that those matters cited herein are believed to be true as reported and as further grounds for the relief sought.

16.    There is a fundamental presumption that every party that comes to this Court, or any other Article I tribunal, is a "corporate entity" (creature of the state) engaged in commerce or commercial activity in the closed monopoly of the Federal Reserve System, unless this presumption is

rebutted. This presumption is again hereby rebutted and the Rule of Necessity is invoked.

## STATEMENTS OF FACT

17.   On or about June 20, 2008, Michael Waters (Plaintiff) purchased certain residential real property located within the jurisdiction of this Court, located at 1330 W 3100 N ("property").

18.   Plaintiffs refinanced the property through the sale of their Promissory Notes to Stearns Lending on or about May 29, 2010. (Exhibit 1) Accounts numbers 42009112 and FHA Case # 521-7174251-703.

19.   Upon information and belief, the Promissory Notes were not connected to the Deed of Trust. Plaintiffs recently learned that since a Deed of Trust must be evidenced by a Promissory Note, it appears, a Deed of Trust not connected to a Promissory Note may be unenforceable and invalid. (The term "dormant Deed of Trust" will be referred to as the purported unenforceable and invalid Deed of Trust).

20.   The first dormant Deed of Trust was recorded on June 09, 2009  as Weber County recorded document number W2415762 (copy attached hereto as Exhibit 2).

21.   Pursuant to the terms of the dormant Deed of Trust, Stearns Lending, is noted as the Lender for the dormant Deed of Trust.  (See: Exhibit 2)

22.   At some point in time, Plaintiffs were notified that Bank Of America, was the servicer of their Promissory Notes.

23.   On or about April 23rd , 2010, Plaintiffs sent a qualified Written Request for account 205267413 (Exhibit A).

24.    On or about  May21, 2010, Plaintiff sent a second qualified Written Request for account  205267413 (Exhibit B).

25.    On or about  June 1, 2010, Plaintiff sent a Third qualified Written Request for account  205267413 (Exhibit C).

26.    On or about May 29, 2010, Plaintiff sent a Notice of Lenders Default for non-response to a qualified Written Request for account 205267413 (Exhibit D).

27.    Bank Of America proceeded to foreclose on defendants property before any transfer or assignment could be signed or recorded between Stearns lending and Bank of America. Unlawful Detainer, Brandley v. Lewis, 97 Utah 217, 92 P.2d 338, 339 and McCracken v. Wright, 159 Kan. 615, 157 P.2d 814, 817.

28.    Upon information and belief, Defendant has not shown any validity to file and/or represent anyone regarding this Deed of Trust/ Promissory Note.

29.    Upon information and belief, the Notice of Trustee Sale document is invalid and should not be considered as a valid link in the chain of documents necessary to effectuate a non-judicial foreclosure on Plaintiff's real property.

30.    On or about May 29, 2010 loan number 205267413 was transferred to Bank Of America

31.    Upon information and belief, none of the Defendants are the true holder in due course or the real party in interest with standing to act as beneficiary of Plaintiff's Deed of Trust.

32.    Upon information and belief, Defendant(s) have not put assets at risk or provided consideration in this matter, and does not hold a valid title

interest in the instant matter, and does not have standing as a party of interest.

33.     Upon information and belief, Defendant(s) do not possess a valid chain of title evidencing it is the successor Beneficiary in this matter, and as such is not qualified to act as the "Beneficiary" of Plaintiff's Deed of Trust as defined by Utah Code 57-1-19.

34.     Upon information and belief, Defendant(s) are not the true holder in due course or the real party in interest with standing to act as beneficiary of Plaintiff's Deed of Trust.

35.     On May 26, 2010 Recontrust Company Proceeded with a Notice of Default. (Exhibit 3)

36.     On June 10, 2010 Recontrust Company Filed a Cancellation of Notice Of Default. (Exhibit 4)

37.     On June 10, 2010 Recontrust Company Proceeded with a Notice of Default. (Exhibit 5)

38.     Notice of Default was recorded in the Weber County Recorders' office on May 26, 2010. Weber County Recorders Document #W2474369 (Exhibit 3)

39.     On June 10, 2010 Recontrust Company Recorded a Cancellation of  Notice of Default. Weber County Recorders Document # 2477857 (Exhibit 4)

40.     On June , 2010 Recontrust Company Recorded a Notice of Default. Weber County Recorders Document # 2477858 (Exhibit 5)

41.     On May 26th , 2010 a Substitution of Trustee by Recontrust Company was recorded in the Weber County Recorders' office, document # 2474368. (Exhibit 6)

42. On May 26, 2010 a Corporate Assignment of Deed of Trust was recorded in the Weber County Recorders' office document number 2474367 (Exhibit 6)

43. Upon information and belief, Recontrust Company does not have standing to act as successor trustee with the power of sale.

44. Based upon the forgoing, a controversy exists as to whether or not any of the Defendant(s) are qualified or entitled to sell Plaintiff's Property as permitted by Utah Code 57-1-23.

45. Plaintiff contends, that there exists a broken chain of ownership and that none of the Defendants Corporations have the right to act as the Trustee or Beneficiary of the Plaintiff's Deed of Trust pursuant to Utah Code 57-1-19 et seq.

46. By reason of the foregoing a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liabilities that exist among the parties to the Agreements.

47. The Plaintiffs has incurred Court costs and fees in this matter.

48. Should Plaintiffs prevail in this matter they are entitled to an award of Court costs and fees.

49. Plaintiff has filed contemporaneously herewith a Motion for a Temporary Restraining Order to enjoin the Defendant(s) from conducting a Trustee's Sale unless and until such time that the Defendants can establish to this Court that they are qualified to act and exercise the powers and remedies of the Trustee, and Beneficiary pursuant to Utah Code 57-1-19 et seq.

## ADDITIONAL FACTS IN SUPPORT OF CLAIMS

50.   Plaintiff reaffirms and re-alleges the preceding paragraphs as set forth herein below.

51.   Upon information and belief, Plaintiffs discovered that Plaintiffs were not lent the sum of $351,139 on May 29, 2010 from the defendant and therefore it appears that Plaintiffs did not receive a Loan.

52.   Upon information and belief, Plaintiff contends they did a currency exchange and not a Loan pursuant to Money Transmitter Law by selling their Promissory Note to Stearns Lending as described in the memorandum decision by U.S.D.C., District of Connecticut, District Judge MARK R. KRAVITZ:

See: RAYMOND WINTSON McLAUGHLIN and Shakir Ra-Ade Bey, Plaintiffs, v. CITIMORTGAGE, INC., Defendant. No. 3:09CV1762 (MRK),      United States District Court, D. Connecticut. June 11, 2010.

"Private parties may enter into transactions to trade whatever they agree on    as having equal value; they are not limited to gold and silver coins. **Here, the  Mortgage Company traded its check for [the] promise to pay on the     promissory note executed at the time of the mortgage's creation. [Plaintiff] in turn traded the check for the house.** Neither transaction        implicates or violates a constitutional restriction on the states." (Emphasis added).

53.   Upon information and belief, Plaintiffs contends, Judge Kravitz's statement: "promissory note executed at the time of the mortgage's creation" is the court's acknowledgement that the promissory note was not a part of the Deed of Trust.

54.   Upon information and belief, Plaintiffs have not found any evidence that they ever received a loan from any of the Defendant.

55.   Upon information and belief, the Deed of Trust and the Promissory Note were not integral, therefore, the Deed of Trust may be unenforceable *See: Carpenter v Longan, 83 U.S. 16 Wall. 271 (1872).*

56.   Plaintiff(s) have spent many weeks deciphering the dormant Deed of Trust from Defendant.

57.   On page 1 of the dormant Deed of Trust, <u>Definitions</u> are given for words used throughout the dormant Deed of Trust. (*See:* Exhibit 2).

58.   The word "Loan" is one of the words defined in said dormant Deed of Trust.

59.   On page 1 of the dormant Deed of Trust it states: "Loan means the debt evidenced by the Note, with interest, and all renewals, extensions, modification of the note repayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest." (*See:* Exhibit 2 page 1).

60.   Plaintiffs incorrectly believed for quite some time, that the word "Loan" in the dormant Deed of Trust meant that Plaintiffs were <u>lent</u> an amount of money on which Plaintiffs was obligated to make payments or lose their property.

61.   Upon information and belief, Plaintiffs now comprehends that is not what is actually stated in the dormant Deed of Trust.

62.   In fact, upon information and belief, the dormant Deed of Trust never indicates that Plaintiffs were ever <u>lent</u> the sum of $351,139 from the Defendant(s).

63.   Upon information and belief, Plaintiffs sold a Promissory Note to Stearns Lending.

64.   Upon information and belief the dormant Deed of Trust and the Promissory Note are two entirely separate documents.

65.   Upon information and belief, the dormant Deed of Trust and the Promissory Note are not now nor have ever been conjoined as a single document.

66.   Pursuant to *Carpenter v Longan, 83 U.S. 16 Wall. 271 (1872)*, the Promissory Note can survive without the dormant Deed of Trust.

67.   In contrast however, pursuant to *Carpenter v Longan, Id.*, the dormant Deed of Trust is invalid without the Promissory Note.

68.   In other words, it appears as though, the dormant Deed of Trust and the Promissory Note cannot <u>ever </u>be apart in law, and the dormant Deed of Trust still be considered valid. *See: Carpenter v Longan, Id.*

69.   In this instant case, Plaintiffs dormant Deed of Trust was recorded at the Weber County Recorders  Office on June 3, 2009 (Exhibit 2 Weber  County recorded document number 2415762) and it appears the Promissory Note was sent to the purported lender,  Stearns Lending.

70.   Upon information and belief, in order to enforce the dormant Deed of Trust, Defendant, would have to meet the burden of proving the dormant Deed of Trust and the Promissory Note were <u>always</u> together.

71.   Upon information and belief, if in fact that the documents were not ever together in the first place, the dormant Deed of Trust may be invalidated.

72.   Plaintiffs contends, pursuant to law, that if the dormant Deed of Trust is invalid, it may therefore be unenforceable.

73.   Upon information and belief, Defendant, may have committed acts which may have led to fraud against this Court, and fraud against the Plaintiff by representing that purported Trustee, Recontrust Company, has the right to hold a non-judicial Trustee Sale to steal Plaintiffs property pursuant to a dormant Deed of Trust which may be invalid, and

unenforceable, along with recorded Assignments and Substitution of Trustee documents that are fraudulent.

74.    Upon information and belief, Stearns Bank altered said Promissory Note by stamping same "PAY TO THE ORDER OF \*\*\*"Bank Of America"\*\*\*\*\*\*\* WITHOUT RECOURSE."

75.    Pursuant to, inter alia, several sections of the Utah Code 70A and the Federal Reserve Board's definition of "check" in Black's Law Dictionary (6th ed., 1991), Stearns, act of altering the Promissory Note may have caused said Promissory Note to become a "check" and/or similar "instrument".

76.    Upon information and belief, the ONLY reason for altering a Promissory Note in such a manner is to resell the Promissory Note.

> Note: The Federal Reserve Board defines a check as "a draft or order upon a bank    or banking house purporting to be drawn upon a deposit of funds for the payment at all events of a certain sum of money to a certain person therein named or to him or his order or to bearer and payable instantly on demand." **It must contain the phrase "pay to the order of."** (Emphasis added)

77.    Plaintiffs contends, by altering the Promissory Note,Stearns Lending discharged the Obligor (in this instant case Plaintiffs), from the obligation.

78.    Upon information and belief, Stearns Lending then sold the discharged Promissory Note into a securitization trust..

79.    If it is ever proven that the securitized trust is the current "Holder" of Plaintiff's discharged Promissory Note, The the Securitized turst cannot be the Holder in Due Course of the Promissory Note pursuant to

Utah Code 70A-3-302, and therefore pursuant to the law, is unable to lawfully foreclose on Plaintiffs real property.

80.     Plaintiffs are not concerned any longer about the Promissory Note, or who is the "Holder" of it, since Plaintiffs have learned that the Promissory Note was "Altered" which by law, discharged Plaintiffs as the Obligor of any and all obligations of the Promissory Note in accordance with the provisions of Utah Codes 70A-3-604(1), 70A-3302(1)(3), 70A-3-407(1), 70A-3-305(1)(a)(ii)(iii), 70A-3-602(1-2)(a-b), 70A-3-416(1)(c), and 70A-3-417(1)(a-b) Black's Law Dictionary (6th ed., 1991), p.77.

**Alter.** To make a change in; to modify; to vary in some degree; to change some of the elements or ingredients or details without substituting an entirely new thing or destroying the identity of the thing affected.

**To change        partially.** To change in one or more respects, but without destruction of existence or identity of the thing changed; to increase or diminish. *See* Alteration; Amend; Change. (Emphasis Added.)

81.     Upon information and belief, Stearns Lending stamped the Original Promissory Note –"PAY TO THE ORDER OF ***** WITHOUT RECOURSE".

82.     Upon information and belief, such "**an intentional voluntary act of the addition of words to the instrument indicates[ing] discharge of**" said Original Promissory Note.

83.     Upon information and belief, Stearns Lending converted the Original Promissory Note to a "CHECK" and then "cashed" and/or monetized the Original Promissory Note/CHECK, then gave a third party in addition to Plaintiffs, the Federal Reserve Notes as a "currency exchange" and NOT as a Loan. This is evidenced by a pattern and practice of Stearns Lending Altering the note as described and converting it to a check, and

then cashing the note and giving it to a 3rd party as a currency exchange and not as a loan (See Exhibit 8)

84.    Upon information and belief based on accounting documents, Stearns Lending then re-sold the "check/Promissory Note" yet failed to pay Plaintiffs the money received from the sale of said check/ Promissory Note.

85.    Upon information and belief Stearns Lending used "legalese" to trick Plaintiffs into believing any money they received was not from the sale of the Promissory Note, but from a purported Loan in which Stearns Lending and Plaintiffs were in agreement as described in the dormant Deed of Trust. (*See*: Exhibit 2).

86.    Upon information and belief, as described in A, B and C below, Stearns Lending may have committed fraud in the factum and/or fraud in the inducement to trick Plaintiffs into believing Stearns Lending provided a purported Loan equal to the face value of the check/Promissory Note to Plaintiffs. On page 1 of the document entitled "Adjustable Rate Note," it states:

BORROWER'S PROMISE TO PAY In return for a Loan that I have received, I promise to pay U.S. $351,139.00" (Emphasis Added.)

A.    Upon information and belief, the statement in the Promissory Note, "In return for a Loan received from lender", is written in the past tense and therefore Plaintiffs contends, is not describing a sum of $351,139.00 "Loaned" to Plaintiffs from Stearns Lending.

*See:* Black's Law Dictionary (6th Ed., 1991).
**Loan. A lending. Delivery by one party to and receipt by another party of sum of money upon agreement, express or implied, to repay it with or without interest.** (Emphasis Added.) See also: *Boerner v. Colwell Co.*, 21 Ca1.3d 37, 145 Cal.Rptr. 380, 384, 577 P.2d 20(1989). "Anything furnished for temporary use to a person at his request, on condition that it shall be returned, or its equivalent in kind, with or without

compensation for its use." and *Liberty Nat. Bank & Trust Co. v. Travelers Indem. Co.*, 58 Misc.2d 443, 295 N.Y. S.2d 983, 986 (2009).

B.      Given the fact in the dormant Deed of Trust, it states the word Loan is defined as "the debt evidenced by the Note…" and the Promissory Note does not state that Plaintiffs ever received a Loan from Bank Of America in which to have a Debt, Plaintiffs contends they cannot be in default of any Loan from any of the Defendants, as they did not receive a Loan from the Defendant.

C.      Furthermore, Plaintiffs contends they have been defrauded by Stearns Lending and they have shared in the events that have led to Plaintiffs making unnecessary monthly payments, as well as their diminished credit standing, court costs, and ultimately the pending unlawful foreclosure of their property.

87.     Upon information and belief, based on Plaintiffs recollection and the accounting of the transaction, Plaintiffs **did not** receive any money from selling of the Promissory Notes to Bank Of America.

88.     Stearns Lending convinced Plaintiffs to sign a promissory note to Stearns Lending one for the amount of $351,139.00 .

89.      Upon information and belief, Stearns Lending used Plaintiffs money to purchase the house from the seller, as evidenced in the final HUD 1 statement.

90.     Therefore, upon information and belief, Defendant(s) did not risk one dime of their assets to purchase the house from the seller.

91.     Upon information and belief, Stearns Lending committed unlawful conversion of Plaintiffs money from the sale of Plaintiffs promissory notes.

92.     Upon information and belief, Plaintiffs were tricked by Stearns Lending into believing Stearns Lending was giving them a loan.

18

93.    Plaintiffs have made numerous monthly payments to Bank Of America believing they were repaying an actual loan from Stearns Lending.

94.    After careful inspection of the verbiage in the Deed of Trust and Promissory Note, it is now obvious to Plaintiffs and should be obvious to this Court, that Plaintiffs only promised to pay for the words "a loan they have received", and not a loan they were getting from Stearns Lending.

95.    This type of unilateral contract is illegal and therefore void.

96.    No person or entity is allowed to trick a party into signing a contract that makes the party liable to a person or entity for something the party already owns, in this case, "a loan I have received."

97.    What is to stop someone from tricking a party into signing a promissory note promising "for that shirt you have on you already own, you promise to pay me $50.00?"

98.    As with most American homeowners, the Defendant(s) have tricked Plaintiffs by media brainwashing and the use of common words such as "loan" into paying years for something the Defendant. has never produced.

99.    Plaintiffs contends they were tricked into believing they received a Loan as opposed to a currency exchange through confusing legalese in the dormant Deed of Trust and Promissory Note, therefore causing them to make payments to Defendant for a Loan they did not receive from any Defendant.

100.   Defendant(s) should be criminally charged for the fraud they committed against Plaintiffs.

101.   Interpret the Plaintiffs Deed of Trust and Promissory Note;

102.   Determine if any Defendant(s) ever lent Plaintiffs the sum of

$351,139.00. Therefore, Plaintiffs contends since no loan from Stearns Lending actually occurred, they cannot be in default of a loan with Stearns Lending, Or Bank Of America.

103.   Therefore, unless Defendant can prove they ever actually lent Plaintiffs the sum of $351,139.00, they have no right to claim Plaintiffs is in default of any loan.

104.   Plaintiffs move the court for a temporary restraining order enjoining the Defendant(s) from exercising the power of the Trustee and Beneficiary of the Plaintiffs Deed of Trust pursuant to Utah Code 57-1-19 et seq., until such time that Defendant(s) can clearly establish by documentary evidence that they have the right to do so;

105.   Determine and declare if Defendant(s) do have the right pursuant to  Utah Code 57-1-19 et seq to act as the Trustee and Beneficiary of the Plaintiffs Deed of Trust and exercise any rights or obtain any remedies thereto;

106.   Plaintiffs reserves the right to amend this Complaint upon new discovery or if additional acts of fraud are discovered.

## BOND ISSUE

107.   Plaintiffs incorporate, reaffirm, and reallege the preceding paragraphs by reference as through fully set forth herein.

108.   Although Federal Rules of Civil Procedure require a bond to protect the interest of a party with rights to a property, no bond should be required herein as defendants do not have a valid chain of title to Plaintiffs Property and therefore have no right to Plaintiffs Property. A party that has no interest and no right to a property cannot possibly incur a loss.

109.   If this Court directs that a bond be required, Plaintiffs hereby requests a *de minimus* bond as they are indigent. Plaintiffs must be

considered by this Court to be the true owner of the Property until Defendants can establish evidence of ownership in this Court.

110.  The preceding notwithstanding, this court should recognize that Plaintiffs property is itself the bond in this instant matter and whomever succeeds in the litigation is indemnified and protected by the value of Plaintiffs real property. Accordingly, requirement of a bond would be little more than punishment on Plaintiffs and bias and prejudice in favor of Defendants.

**LEGAL ARGUMENT**

111.  A Trustees Sale is a statutory remedy provided to beneficiaries pursuant to a Deed of Trust Utah Code 57-1-19 et seq., a "beneficiary" of a Deed of Trust is defined by Utah Code 57-1-19:

"Beneficiary" Means the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest.

112.  There is no Deed of Trust recorded in Weber County identifying the current purported beneficiary as Bank Of America.

113.  The Plaintiffs has filed a Complaint/Declaratory Judgment Action and the Motion For a Temporary Restraining Order to preclude any and all of the Defendants from conducting a fraudulent and/or unlawful Trustee's Sale, until such time as it can be established as to whether or not any of the Defendant's are acting on behalf of the current true beneficiary of the Plaintiffs Deed of Trust.

114.   Traditionally, preliminary injunctions are property granted only when there is (1) a strong likelihood of success on the merits; (2) a possibility of irreparable injury not remediable by damages; (3) a balance of hardships in the movant's favor; and (4) a public policy in favor of granting the relief. *See: Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II. 176 Ariz. 275, 280, 860 . 2d 1328, 1333 (Ct App. 1993)* (citing *Shoen v Shoen*, 167 Ariz. 58, 63, 804 P. 2d 787, 792 (Ct. App. 1990); *See Phoenix Orthpedic Surgeons, Ltd v Peairs*, 164 Ariz. 54 (App. 1989), 790 P. 2d 752.

**A.   Strong Likelihood Of Success On The Merits**

115.   The Plaintiffs can establish a strong likelihood of success on the merits.  In the case at hand, no Defendant, despite written requests, have provided any evidence that the current Trustee's Sale on October 26, 2010 12:00 PM has been brought by a bona fide Trustee or Beneficiary of the Deed of Trust.  As a result, Plaintiffs prays that this Court establish the rights of the Defendants to claim an interest in the Plaintiffs property, and that until such time Defendants be barred and estopped from having or claiming or taking any right in the property adverse to Plaintiffs.

116.   "The trustee's deed shall raise the presumption of compliance with the requirements of the Deed of Trust and this chapter relating to the exercise of power of sale and sale of the trust property, including recordings, mailing, publishing and posting of notice of sale and the conduct of sale.

22

Such deed shall constitute conclusive evidence of the meeting of such requirements in favor of purchasers or encumbrancers for value and without actual notice. Knowledge of the trustee shall not be imputed to the beneficiary." However the current Trust Deed clearly establishes that lawfully the purported beneficiary is _not_ Bank Of America. and as such, the Defendant does not have any right to conduct the Trustee's Sale set for Tuesday October 26, 2010.

117.    In order for the Plaintiffs to prevail on the merits of their Complaint for Declaratory Judgment they would have to show that there was defect in the trustee's sale process. Plaintiffs can show conclusive evidence of the same.

118.    In the case at hand, there is not one shred of evidence that not only is Bank Of America. a bona fide beneficiary, but also that the Defendant is a bona fide nominees or trustees pursuant to the Deed of Trust. Therefore, because the Plaintiffs can present evidence that a defect in the Trust Deed/ trustee's sale process exists, the Temporary Restraining Order should be issued in all due haste to halt the sale set for Tuesday October 26th, 2010 12:00 PM.

119.    Defendants have provided no evidence that they have full legal interest in and title to the Deed of Trust and have provided no evidence that they have any interest in the Note.

**B.     A Possibility of Irreparable Injury Not Remediable Prior to Declaratory Judgment.**

120.    The Plaintiffs seek not to lose their residence.  Their home is all they have which they will lose if the Defendants are not stopped from conducting the Trustee Sale on October 26, 2010 12:30 PM.  The Defendants have a broken chain of title which precludes them from the right to hold a Trustee sale.  The Trustee Sale should be stopped in order to prevent irreparable harm to the Plaintiffs by the unlawful Trustee sale of their unique property by parties that have no right to do so.

121.    Michael Waters  is currently unemployed. If the property is allowed to be sold Michael Waters will never be a home owner again since being unemployed will no longer qualify him for a home loan.

122. Michael Waters is married and has 4 children living at home to take care of. If this property is sold at auction Michael Waters will be homeless and be unable to care for any of his children.

123. Michael Waters youngest Child Lindsay Waters is recovering from severe burns to both of her hands and because of such has special needs that cannot be met if the property is sold at auction and is forced to live on the street.

124. Michael Waters is currently seeking employment, looking for employment requires about 30 hours a week of  work and submitting

applications online and corresponding online. If the property is sold at auction and Plaintiff is forced to live on the street then plaintiffs ability to look for, and find work will be greatly if not completely diminished.

125. Michael Waters ability to maintain full time employment will be greatly hindered if not impossible without a residence at which to occupy for rest, and rehabilitate from a days work.

126. Plaintiff is sending Defendants a copy of this Petition, via USPS, and Facsimile, and electronic mail. Plaintiff is making every attempt to serve all of the known parties. Given the fact that the current trustee sale is set for October 26, 2010 12:00 PM, Plaintiffs requests this court grant this Petition ex-parte in order to prevent irreparable harm to Plaintiffs and to allow time for Plaintiffs to properly serve all parties.

**C.    A Balance of Hardships in the Movant's Favor**

127. The only hardship that the Defendants will suffer if the Temporary Restraining Order is ordered, is having to wait for the final ruling from the court on the complaint.

128. The Defendants will actually benefit if the sale is postponed due to the fact that they will have one less unoccupied home on their books which may take many months to move if it falls back into their position.

129. As set forth above, none of the alleged foreclosing parties were a party to the original contract documents; were not named as a payee in the

Note; and have failed to demonstrate any valid assignment of either the Deed of Trust or the Note, and are thus legally precluded from instituting or maintaining a non-judicial foreclosure.

**D.      Public Policy**

130.     In regard to Deeds of Trust, our legislature has established certain criteria in order for a trustee to exercise the power of sale.  Public policy advocates the following of these requirements.  In the case at hand, the trustee's sale process was to be conducted exactly as prescribed by the legislature in Utah Code 57-1-19 *et. seq.*  Defendantshas not done so in this matter. To date, the Defendant have not been able to establish any evidence of a valid chain of title to act as the Trustee or Beneficiary of the Plaintiffs Deed of Trust.

131.     The granting of the relief requested herein is in the public interest, as the consuming public, including Plaintiffs, will continue to be harmed by the illegal and unlawful conduct of the Defendants if the relief requested herein is not granted.

132.     Public Policy favors giving each party their day in Court and their opportunity to be heard.  In this case, the party would be robbed of this opportunity should the trustee sale go through.  Accordingly, the Temporary restraining order should be ordered.

133.    Plaintiffs, allege criminal violations have occurred regarding foreclosure documents filed in the Weber County Recorders office that effect their real property.  It is in the public interest to investigate and prevent crimes whenever possible.

134.    Furthermore, if Defendants can just appoint themselves as beneficiary and successor trustee and file a Notice of Sale and foreclose on a property without having the proper documentation in which to do so, what is to stop anyone from doing the same?  Laws and Courts would not be necessary if this situation is allowed to occur.

135.    The non-judicial foreclosure procedure was created as a privilege for the banks to reduce costs.  Now it appears, the banks have converted this privilege into a criminal act.

136.    In fact, laws were created and Courts were designed to prohibit exactly what Defendants are doing.

137. This (Alleged) loan is insured in favor of the defendant with Mortgage Insurance and with the FHA (Regardless of how long it takes to foreclose). If the defendant were to prevail in court the risk of any loss to the bank is non existent.

138. Upon Information and belief the Defendant has actually no proof nor will defendant be able to prove that they will lose any real money or have any real costs associated with the default of this Alleged loan. Therefore if no

loss can be calculated the bank has nothing to lose by the granting of this motion.

138.  Bank Of America was in receipt of TARP funds for the bank bailout from the federal government. This money was given to the banks to assist them to deal with the costs directly dealing with foreclosures etc...

139. Bank of America has already postponed foreclosures voluntarily in 23 states. This postponement was made voluntary by Bank Of America on the basis of making sure that the letter of the law was followed and that Bank of America does in fact only foreclose on those they are legally and lawfully able to.

### E.      Conclusion

140.     This is an action for declaratory relief which is being brought pursuant to applicable law to declare that Defendants have no legal or equitable rights in the Note or Deed of Trust for purposes of non-judicial foreclosure and that Defendants have no legal standing to institute or maintain a non-judicial foreclosure on the Property.

142.     Plaintiffs have clearly established entitlement to a preliminary injunction. Plaintiffs proved that: (1) they have a likelihood of success on the merits; (2) there is a likelihood of irreparable harm if a preliminary injunction is not issued; (3) the balance of hardships favors an injunction; and (4) an injunction is in the public interest.

153.   In this action, the Defendants must be restrained by a Temporary restraining order from conducting the Trustee's Sale of the Plaintiffs residence until and unless they first establish they have the right to act as the Trustee or Beneficiary of the Plaintiffs Deed of Trust and take advantage of the remedies provided by Utah Code 57-1-19 *et. seq.*

**WHEREFORE,** based upon the foregoing, Plaintiffs move this Court to grant Plaintiffs Petition for a Temporary Restraining Order enjoining the Defendants, including their successors and/or assigns, parent companies and subsidiaries, from exercising the power of the Trustee and Beneficiary of the Plaintiffs' Deed of Trust pursuant to Utah Code 57-1-19 *et seq.*, until such time that Defendants can clearly establish by documentary evidence that they have the right to do so;

DATED: the 26 day of September, in the year of Our Lord, 2010

BY: _____,
Michael Waters, *pro se*
Signed reserving all my rights at UCC 1-308

## **VERIFIED STATEMENT**

The undersigned Plaintiff, Michael Waters *pro se*, a man, and a civilian, hereinafter "Plaintiff", does solemnly declare and state as follows:

1.    Plaintiff is competent to state the matters set forth herein.

2.    Plaintiff has knowledge of the facts stated herein.

3.    All the facts herein are true, correct and complete, not misleading, to the best of Plaintiffs knowledge and belief, and admissible as evidence, and if called upon as a witness, Plaintiff will testify to their veracity.


BY: _____,
      Michael Waters, *pro se*
      Signed reserving all my rights at UCC 1-308

IN THE UNITED STATES DISTRICT COURT
STATE OF UTAH

| | |
|---|---|
| MICHAEL WATERS Pro se<br>                    Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA<br>                    Defendant. | CASE NO: 1:10-cv-50<br><br>Magistrate Judge Paul Warner<br><br><br>Temporary Restraining Order |

### Temporary Restraining order

Based on the Plaintiff's Petition for temporary restraining order and preliminary injunction, and it appearing to the Court that there is sufficient/insufficient basis to granting this motion to resolve the matter of proof of claim by the Defendant.

IT IS HEREBY ORDERED that Plaintiff's Cease the following

1)   All foreclosure proceedings on the property located at 1330 W 3100 n Pleasant View, UT 84414

2)   Trustee Sale occurring on October 26th 2010 shall be cancelled pending the outcome of this case, and approval from the court to move forward.

Is:

        GRANTED _____

        DENIED _____

Dated this _____ day of _____, 2010.

_____
District Court Judge

1

# EXHIBIT

# 1

CERTIFIED TO b   A TRUE
AND CORRECT COPY OF THE
ORIGINAL DOCUMENT
Meridian Title Company

By _____

**Multistate**

Loan No.: **42009112**

| FHA Case No. |
| **521-7174251-703** |

# NOTE

**MIN 1001833-0000070395-0**
**MERS TELEPHONE:  (888) 679-6377**

**May 29, 2009**
[Date]

## 1330  WEST 3100 NORTH, PLEASANT VIEW, UTAH 84414
[Property Address]

1. **PARTIES**
    "Borrower" means each person signing at the end of this Note, and the person's successors and assigns.  "Lender" means
    **STEARNS LENDING, INC.**
and its successors and assigns.

2. **BORROWER'S PROMISE TO PAY; INTEREST**
    In return for a loan received from Lender, Borrower promises to pay the principal sum of **Three Hundred Fifty One
Thousand One Hundred Thirty Nine And 00/100** Dollars (U.S. **$351,139.00**), plus interest, to the order of Lender.  Interest will be
charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **Five** percent (**5.000%**) per
year *until the full amount of principal has been paid.*

3. **PROMISE TO PAY SECURED**
    Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as
this Note and called the "Security Instrument."  The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

4. **MANNER OF PAYMENT**
    (A)    **Time**
    Borrower shall make a payment of principal and interest to Lender on the **FIRST** day of each month beginning on July 1,
2009,.  Any principal and interest remaining on the 1st day of June, 2039, will be due on that date, which is called the "Maturity
Date."
    (B)    **Place**
    Payment shall be made at **4 HUTTON CENTRE DRIVE, SUITE 500, SANTA ANA, CALIFORNIA  92707-8710** or at
such place as Lender may designate in writing by notice to Borrower.
    (C)    **Amount**
    Each monthly payment of principal and interest will be in the amount of U.S. **$1,884.99**.  This amount will be part of a larger
monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described
in the Security Instrument.
    (D)    **Allonge to this Note for payment adjustments**
    If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the
allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.
[Check applicable box]

    [ ] Graduated Payment Allonge      [ ] Growing Equity Allonge      [ ] Other [specify]

5. **BORROWER'S RIGHT TO PREPAY**
    Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day
of any month.  Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the
remainder of the month to the extent required by Lender and permitted by regulations of the Secretary.  If Borrower makes a partial
prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those
changes.

---

FHA Multistate Fixed Rate Note

10/95
1R (0809)

Initials: _____

usfnote

**6. BORROWER'S FAILURE TO PAY**

**(A)    Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen (15) calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent (4.00%) of the overdue amount of each payment.

**(B)    Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C)    Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.    WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
MICHAEL WATERS                           -Borrower
Social Security No.: 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

Pay to the order of:

_____
Without Recourse
STEARNS LENDING, INC.

By:_____

Name and Title: _____

---

FHA Multistate Fixed Rate Note                                    10/95
                                                                  1R (0809)

# EXHIBIT

# 2

Return To:
STEARNS LENDING, INC.
4 HUTTON CENTRE DRIVE, SUITE 500
SANTA ANA, CALIFORNIA 92707-8710
Attn.: SHIPPING DEPT./DOC. CONTROL
Loan No.: 42009112
Prepar

001011444     WATERS     M

*W2415762*

E# 2415762 PG 1 OF 8
ERNEST D ROWLEY, WEBER COUNTY RECORDER
03-JUN-09  206 PM  FEE $24.00 DEP SC
REC FOR: MERIDIAN TITLE COMPANY
ELECTRONICALLY RECORDED

610  205267413  D2  001  003     **Recording Data**

Tax Serial Number: 15-205-000

State of Utah   MTGH H1803

# DEED OF TRUST

FHA Case No.
521-7174251-703

MIN: 1001833-0000070395-0
MERS TELEPHONE: (888) 679-6377

THIS DEED OF TRUST ("Security Instrument") is made on May 29, 2009. The Grantor is MICHAEL WATERS ("Borrower"). The trustee is MERIDIAN TITLE COMPANY ("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. STEARNS LENDING, INC., ("Lender") is organized and existing under the laws of the State of CALIFORNIA, and has an address of 4 HUTTON CENTRE DRIVE, SUITE 500, SANTA ANA, CALIFORNIA 92707-8710. Borrower owes Lender the principal sum of Three Hundred Fifty One Thousand One Hundred Thirty Nine And 00/100 Dollars (U.S. $351,139.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on June 1, 2039. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in WEBER County, Utah:

LOT 45, WESTVIEW SUBDIVISION PHASE 1, ACCORDING TO THE PLAT THEREOF AS RECORDED IN THE OFFICE OF THE WEBER COUNTY RECORDER.

FHA Utah Deed of Trust with MERS - 4/96
4N(UT) (0305).01          Amended 2/98          Page 1 of 8
utfmertd

Initials:

E# 2415762 PG 2 OF 8

which has the address of 1330 WEST 3100 NORTH [Street] PLEASANT VIEW [City], Utah 84414 [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property. Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

FHA Utah Deed of Trust with MERS - 4/96
4N(UT) (0305).01          Amended 2/98          Page 2 of 8          Initials: [signature]

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to

FHA Utah Deed of Trust with MERS - 4/96
4N(UT) (0305).01          Amended 2/98          Page 3 of 8

Initials:

E# 2415762 PG 4 OF 8

enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.  **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.  **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument

prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment



in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall

collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the power of sale is invoked, Trustee shall execute a written notice of the occurrence of an event of default and of the election to cause the Property to be sold and shall record such notice in each county in which any part of the Property is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county clerk of the county in which the sale took place.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

20. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

[ ] Condominium Rider        [ ] Growing Equity Rider        [ ] Other [specify]
[ ] Planned Unit Development Rider  [ ] Graduated Payment Rider

       BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____                                 (Seal)

                      MICHAEL WATERS                    -Borrower

E# 2415762 PG 8 OF 8

**STATE OF UTAH,**                        *Salt Lake*                        County ss:

The foregoing instrument was subscribed and sworn to and acknowledged before me this ____ day of _____ by MICHAEL WATERS.

My Commission Expires: 8/9/2011



Notary Public
Residing at: SLC Utah

BRANDY L. KRAMER
NOTARY PUBLIC • STATE of UTAH
64 E 6400 S SUITE 100
MURRAY, UT 84107
COMM. EXP. 08/09/2011

FHA  Utah Deed of Trust with MERS - 4/96
4N(UT) (0305).01            Amended 2/98            Page 8 of 8            Initials

# EXHIBIT

# 3





**AFTER RECORDING RETURN TO:**
RECONTRUST COMPANY, N.A.
2380 Performance Dr, TX2-985-07-03
Richardson, TX 75082

E# 2474369 PG 1 OF 2
ERNEST D ROWLEY, WEBER COUNTY RECORDER
26-MAY-10   1041 AM   FEE $12.00 DEP SC
REC FOR: LSI TITLE AGENCY INC.
ELECTRONICALLY RECORDED

TS#: 10-0061843
TSG#: 100319543UTGSI
APN: 19-205-0020

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL

On or about May 29, 2009, MICHAEL WATERS, as Trustor, executed and delivered to MERIDIAN TITLE COMPANY, as Trustee, for the benefit of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, a certain Trust Deed to secure the performance by the Trustor of the obligations under a Promissory Note. The Trust Deed was recorded in the office of the Weber County Recorder, as Instrument No. 2415762 on June 3, 2009 and covers the following real property:

**LOT 45, WESTVIEW SUBDIVISION PHASE 1, ACCORDING TO THE PLAT THEREOF AS RECORDED IN THE OFFICE OF THE WEBER COUNTY RECORDER.**

Together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.

BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP is presently the holder of the beneficial interest under the Trust Deed, and RECONTRUST COMPANY, N.A., is the trustee. A breach of an obligation for which the trust property was conveyed as security has occurred. Payments are due for the months of February 2010 through May 2010 in the amount of $1,884.99 per month, together with any unpaid taxes, insurance and other obligations under the Promissory Note and Trust Deed. Under the provisions of the Promissory Note and Trust Deed, the principal balance of $348,148.45 is accelerated and now due, together with accruing interest, late charges, costs and trustees' and attorneys' fees. Accordingly, the trustee has elected to sell the property described in the Trust Deed, as provided in Title 57, Chapter 1, <u>Utah Code Annotated</u> (1953), as amended and supplemented.

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**
FOR QUESTIONS, CALL (800) 281-8219, Regular Business Hours: Monday – Friday, 8:00a.m. to 5:00p.m., Central Standard Time.
Dated: May 21, 2010

By:   RECONTRUST COMPANY, N.A.

Shambrica Combs  *Team Member*

STATE OF Texas )
COUNTY OF Tarrant )

**Guadalupe Alicia Granados**

On 5/2/10 , before me _____ , personally appeared _____
Shamburger , Comps Team Member , known to me (or proved to me on the oath of
_____ or through TX DL ) to be the person whose name is subscribed to the foregoing
instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein
expressed.

WITNESS MY HAND AND OFFICIAL SEAL

_signature_

Notary                                    Public's

**GUADALUPE ALICIA GRANADOS**
**My Commission Expires**
**June 18, 2011**

                                                                            Signature

# EXHIBIT

# 4



E# 2477857 PG 1 OF 1
ERNEST D ROWLEY, WEBER COUNTY RECORDER
17-JUN-10   208 PM  FEE $10.00 DEP JM
REC FOR: LSI TITLE AGENCY INC.
ELECTRONICALLY RECORDED

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.

WHEN RECORDED MAIL DOCUMENT
TAX STATEMENT TO:
BAC Home Loans Servicing, LP
2380 Performance Dr, TX2-985-07-03
Richardson, TX 75082

TS#: 10 -0061843
TSG# 100319543UTGSI

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CANCELLATION OF NOTICE OF DEFAULT

The undersigned, as Successor Trustee, hereby cancels the Notice of Default recorded May 26, 2010, as Instrument No. 2474369, in the office of the County Recorder of Weber County, State of Utah, which Notice of Default refers to that certain Trust Deed dated May 29, 2009, and executed by MICHAEL WATERS, as Trustors, to and in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, and MERIDIAN TITLE COMPANY, as Trustee. Said Trust Deed was filed for record with the County Recorder of Weber County, State of Utah, on June 3, 2009, as Instrument No. 2415762.

The Property subject to said Trust Deed is situated in Weber County, State of Utah, and more particularly described as follows:

LOT 45, WESTVIEW SUBDIVISION PHASE 1, ACCORDING TO THE PLAT THEREOF AS RECORDED IN THE OFFICE OF THE WEBER COUNTY RECORDER.

Dated: June 15, 2010                    By:  RECONTRUST COMPANY, N.A.

_____
Assistant Secretary

STATE OF _____ **TEXAS**
COUNTY OF _____ **Tarrant**

On 6/15/2010 , before me Tammy R. Gist _____, personally appeared Tiffany Wade, Asst.Sec. , known to me (or proved to me on the oath of _____ or through TXDL ) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
WITNESS MY HAND AND OFFICIAL SEAL

Tammy R. Gist
Notary Public's Signature

TAMMY R. GIST
Notary Public, State of Texas
My Commission Expires
July 21, 2010

Tax ID: 19-205-0020           Page 1 of 1                    UTCancellation (12/08)

# EXHIBIT

# 5



*M2477858*
E# 2477858 PG 1 OF 2
ERNEST D ROWLEY, WEBER COUNTY RECORDER
17-JUN-10  208 PM  FEE $112.00 DEP JM
REC FOR: LSI TITLE AGENCY INC.
ELECTRONICALLY RECORDED

**After Recording Return to:**
RECONTRUST COMPANY, N.A.
2380 Performance Dr, TX2-985-07-03
Richardson, TX 75082

TS#: 10 -0061843
TSG#: 100319543UTGSI

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL

On or about May 29, 2009, MICHAEL WATERS, as Trustor, executed and delivered to MERIDIAN TITLE COMPANY, as Trustee, for the benefit of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, a certain Trust Deed to secure the performance by the Trustor of the obligations under a Promissory Note. The Trust Deed was recorded in the office of the Weber County Recorder, as Instrument No. 2415762 on June 3, 2009 and covers the following real property:

**LOT 45, WESTVIEW SUBDIVISION PHASE 1, ACCORDING TO THE PLAT THEREOF AS RECORDED IN THE OFFICE OF THE WEBER COUNTY RECORDER.**

Together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.

BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP is presently the holder of the beneficial interest under the Trust Deed, and RECONTRUST COMPANY, N.A., is the trustee. A breach of an obligation for which the trust property was conveyed as security has occurred. Payments are due for the months of February 2010 through May 2010 in the amount of $0.00 per month, together with any unpaid taxes, insurance and other obligations under the Promissory Note and Trust Deed. Under the provisions of the Promissory Note and Trust Deed, the principal balance of $348,148.45 is accelerated and now due, together with accruing interest, late charges, costs and trustees' and attorneys' fees. Accordingly, the trustee has elected to sell the property described in the Trust Deed, as provided in Title 57, Chapter 1, Utah Code Annotated (1953), as amended and supplemented.

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**
FOR QUESTIONS, CALL (800) 281-8219, Regular Business Hours: Monday – Friday, 8:00a.m. to 5:00p.m., Central Time

Dated: June 15, 2010                   By:  RECONTRUST COMPANY, N.A.

Shelby Conklin , Team Member

Tax ID: 19-205-0020                          Page 1 of 2                          UTNOD (08/09)

STATE OF _____ **TEXAS**
COUNTY OF _____ **Tarrant**

On 6/15/2010, before me ___Tammy R. Gist___, personally appeared
__Shelby Conklin__, __Team Member__, known to me (or proved to me on the oath of
_____ or through __Tk DL__) to be the person whose name is subscribed to the foregoing
instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein
expressed.

WITNESS MY HAND AND OFFICIAL SEAL

_Tammy R. Gist_                          TAMMY R. GIST
Notary                                   Notary Public, State of Texas
                                         My Commission Expires
                                         July 21, 2010            Public's                          Signature

# EXHIBIT

# 6



RECORDING REQUESTED AND AFTER
RECORDED MAIL DOCUMENT
TAX STATEMENT TO:
RECONTRUST COMPANY, N.A.
2380 Performance Dr, TX2-985-07-03
Richardson, TX 75082



E# 2474368 PG 1 OF 2
ERNEST D ROWLEY, WEBER COUNTY RECORDER
26-MAY-10   1041 AM   FEE $12.00 DEP SC
REC FOR: LSI TITLE AGENCY INC.
ELECTRONICALLY RECORDED

TS#: 10-0061843
TSG# 100319543UTGSI
APN#: 19-205-0020

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

RECONTRUST COMPANY, N.A., 2380 Performance Dr, TX2-985-07-03, Richardson, TX 75082,
PHONE: (800) 281-8219, is hereby appointed successor Trustee under that certain Trust Deed dated May
29, 2009, executed by MICHAEL WATERS, as Trustor, in which MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., is named as Beneficiary and MERIDIAN TITLE COMPANY, is
named as Trustee, and recorded in the office of the Recorder of Weber County, Utah, on June 03, 2009,
as Instrument No. 2415762.

Said Trust Deed covers the following described real property situated in Weber County, Utah:

> **LOT 45, WESTVIEW SUBDIVISION PHASE 1, ACCORDING TO THE PLAT
> THEREOF AS RECORDED IN THE OFFICE OF THE WEBER COUNTY
> RECORDER.**

The undersigned, the current Beneficiary, hereby ratifies, approves, and confirms all action taken
by the successor Trustee, RECONTRUST COMPANY, N.A., on the Beneficiary's behalf, in
connection with the Trust Deed referenced above before this Substitution of Trustee is recorded.

Dated: 5|21|10

By: BAC HOME LOANS SERVICING, LP, FKA
COUNTRYWIDE HOME LOANS SERVICING,
LP

*Laura Dalley*

Laura Dalley, Authorized Signature

STATE OF Texas
COUNTY OF Tarrent

On 5/3/10 , before me _____Guadalupe Alicia Granados_____ , personally appeared
Brauno Dallas N. Oren and Sis , known to me (or proved to me on the oath of
_____ Sec. _____ of through TXC _____ ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she executed the same for the purposes and
consideration therein expressed.
WITNESS MY HAND AND OFFICIAL SEAL

_____
Notary Public's Signature

> GUADALUPE ALICIA GRANADOS
> My Commission Expires
> June 16, 2011

# EXHIBIT

# 7

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
*M2474367*

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
2380 Performance Dr, TX2-985-07-03
Richardson, TX 75082

E# 2474367 PG 1 OF 2
ERNEST D ROWLEY, WEBER COUNTY RECORDER
26-MAY-10  1041 AM  FEE $12.00 DEP SC
REC FOR: LSI TITLE AGENCY INC.
ELECTRONICALLY RECORDED

WHEN RECORDED MAIL DOCUMENT
TAX STATEMENT TO:
BAC HOME LOANS SERVICING, LP
400 COUNTRYWIDE WAY SV-35
SIMI VALLEY, CA  93065

TS No: 10-0061843
TSG No: 100319543UTGSI
APN: 19-205-0020

SPACE ABOVE THIS LINE FOR RECORDER'S

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 05/29/2009, EXECUTED BY: MICHAEL WATERS, TRUSTOR: TO MERIDIAN TITLE COMPANY, AS TRUSTEE AND RECORDED AS INSTRUMENT NO. 2415762 ON 06/03/2009 OF OFFICIAL RECORDS IN THE COUNTY RECORDERS OFFICE OF WEBER COUNTY, IN THE STATE OF UTAH. THE LAND AFFECTED BY THIS ASSIGNMENT IS LOCATED IN WEBER COUNTY, THE STATE OF UTAH AND IS DESCRIBED AS FOLLOWS:

LOT 45, WESTVIEW SUBDIVISION PHASE 1, ACCORDING TO THE PLAT THEREOF AS RECORDED IN THE OFFICE OF THE WEBER COUNTY RECORDER.

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

Dated: 5/21, 20 10

By: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

BY: DX Cowan, Assistant Secretary

Tax ID: 19-205-0020                    Page 1 of 2                    Form UTAssgn (04/08)

E# 2474367 PG 2 OF 2

STATE OF Texas )
COUNTY OF Tarrant )

On 5/21/10 , before me Guadalupe Alicia Granados , personally appeared
DR Aaron Brett Lee , known to me (or proved to me on the oath of or
through TXDL ) to be the person whose name is subscribed to the foregoing instrument and
acknowledged to me that (s)he executed the same for the purposes and consideration therein expressed.
WITNESS MY HAND AND OFFICIAL SEAL

_Notary Public's Signature_

GUADALUPE ALICIA GRANADOS
My Commission Expires
June 16, 2011

# EXHIBIT

# 8

Loan No.: 42002081

# NOTE

MIN: 1001833-0000047276-2
MERS TELEPHONE: (888) 679-6377

**June 20, 2008**
[Date]

**PLEASANT VIEW**
[City]

**UTAH**
[State]

**1330 WEST 3100 NORTH, PLEASANT VIEW, UTAH 84414**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $313,600.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **STEARNS LENDING, INC..** I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.500%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **FIRST** day of each month beginning on August 1, 2008. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on July 1, 2038, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **4 HUTTON CENTRE DRIVE, SUITE 500, SANTA ANA, CALIFORNIA 92707-8710** or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,982.17.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

---

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Page 1 of 3

SN (0803).01
usc3200

Form 3200 1/01

Initials: _____

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
MICHAEL WATERS                   -Borrower                                         -Borrower

Social Security No.: 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

_____ (Seal)                    _____ (Seal)
                                 -Borrower                                         -Borrower

**CitiMortgage, Inc.**                                         *[Sign Original Only]*

Pay to the order of: _____

Without Recourse
STEARNS LENDING, INC.

By: _____

Name and Title: __**MEGAN CONDER**__
                   **ASSISTANT SECRETARY**